IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SEAN RONDELL BUNDY, | |
| Petitioner | |
| v. | CIVIL NO. JKB-14-0221 |
| | CRIMINAL NO. JKB-08-0226 |
| UNITED STATES OF AMERICA, | |
| Respondent | |

**MEMORANDUM AND ORDER**

*I. Procedural History*

The criminal case at issue in this motion to vacate brought pursuant to 28 U.S.C. § 2255 was preceded by a civil case, *United States v. $82,764.83 U.S. Currency et al.*, Civ. No. JFM-06-2250 (D. Md.). The total amount sought in that civil forfeiture case was $190,994.24, which the Government alleged constituted proceeds traceable to the sale or exchange of controlled substances. (*Id.* Compl., ECF No. 1.) Sean Rondell Bundy, the Petitioner in the instant § 2255 case, filed an answer to the civil forfeiture complaint, contested the Government's allegations, and claimed the amounts in question, which had already been seized pursuant to warrant, were lawfully obtained. (*Id.* Ans., ECF No. 7.) Eventually, in early May 2008, a settlement was reached to release $190,000 to Bundy by check made payable to his attorney, Russell A. Neverdon, Esq., and for Bundy to relinquish any claim to the remaining $994.24. (*Id.* May 9, 2008, Status Report, ECF No. 18; Pl.'s Mot. J. Forfeiture, ECF No. 19.) The Court granted the Government's motion for judgment of forfeiture and entered a final order of forfeiture in accordance with the settlement agreement. (*Id.* May 13, 2008, Order, ECF No. 20.)

On May 8, 2008, criminal complaints were filed against Bundy and Tyron Sherodd Rich, alleging conspiracy and possession of one kilogram of heroin with intent to distribute. (Crim. No. 08-0226, ECF Nos. 1, 5.[1]) Bundy and Rich both had their initial appearances that day and were ordered detained. (ECF Nos. 3, 4, 7, 8.) On May 13, 2008, the same day that the Court entered the order terminating the civil forfeiture case, Bundy and Rich were indicted for conspiracy to distribute and to possess heroin and cocaine with intent to distribute and for possession of heroin with intent to distribute; the indictment also requested forfeiture from Bundy of three bank accounts, one automobile, three watches, and all property derived from or traceable to the alleged offenses, including, but not limited to, $300,000; further, the indictment gave notice of the Government's intent to seek forfeiture of substitute assets up to the value of the described property if such were no longer available to satisfy the request for forfeiture.[2] (ECF No. 11.) On May 21, 2008, the Government applied for a protective order for the $190,000 (the amount to be returned to Bundy under the civil forfeiture settlement agreement and final order of forfeiture) as substitute assets and for attachment of them (ECF No. 14), which the Court granted on September 2, 2008 (ECF Nos. 41, 42).[3] After a hearing, the Court also granted the Government's motion (ECF No. 39) to strike Neverdon's appearance as Bundy's retained counsel because Neverdon's assertion of a 33–1/3% contingency-fee interest in the $190,000 created a conflict of interest with his representation of Bundy in the criminal case. (ECF Nos. 41, 42.) (The Government has acknowledged that its prosecutor in the criminal case

---

[1] All record citations from this point forward will be to Criminal No. JKB-08-0226, formerly WDQ-08-0226.

[2] Very little overlap existed between the assets seized in the civil forfeiture case and the assets named in the indictment's forfeiture notice. As to the latter, the Government sought the balance remaining in one Bank of America account from which it had already seized $33,741.71 in the civil forfeiture proceeding.

[3] Apparently, the Government never relinquished the assets that were the subject of the settlement agreement in the civil forfeiture case.

did not learn that Bundy was a claimant in a civil case until after the civil case had been settled and after the indictment had been filed. (Govt's Resp. to Mot. 2255 at 4-5, ECF No. 235.))

A superseding indictment was filed September 9, 2008, adding one count against each defendant for possession of firearms after having been convicted of a felony and adding a count against Bundy for distribution of and possession of cocaine with intent to distribute. (ECF No. 43.) Thereafter, the Federal Public Defender was appointed to represent Bundy. (Oct. 17, 2008, Order, ECF No. 49.) On November 24, 2008, Rich pled guilty to the conspiracy count.[4] (ECF No. 54.) Although offered essentially the same plea deal as Rich's (Bundy Mot. 2255, Ex. C[5]), Bundy did not agree to it and instead sought a continuation of the motions hearing and trial, which had been set for December 1, 2008 (ECF No. 53). That motion was granted and the motions hearing and trial were reset for January 26, 2009. (ECF No. 55.)

On January 7, 2009, the Government filed its Notice / Information of Enhanced Penalties pursuant to 21 U.S.C. § 851, indicating that Bundy had two prior convictions for felony drug offenses and requesting that Bundy be subjected to the enhanced penalties provided in 21 U.S.C. § 841(b)(1)(A). (ECF No. 60.) On January 26, 2009, the Court conducted a motions hearing, ruled on some of Bundy's pretrial motions, deferred ruling on others until trial, ordered Bundy's public defenders to submit a brief as to whether they had a conflict of interest, set a briefing schedule for the Government's response and Bundy's reply, and postponed the trial. (ECF No. 68.) Bundy's counsel thereafter filed an unopposed motion to withdraw because of a conflict of interest, which was granted. (ECF Nos. 71, 74.) Michael D. Montemarano, Esq., was

---

[4] Rich was later sentenced to 121 months in prison and given a supervised release term of five years. (ECF Nos. 92, 94.)

[5] Bundy's exhibits exist only in paper form. No citation in CM/ECF is available.

3

then appointed under the Criminal Justice Act to represent Bundy. (ECF No. 75.) The motions hearing and trial were reset to begin April 13, 2009. (ECF No. 81.)

On February 25, 2009, a second superseding indictment was filed. (ECF No. 86.) This version removed references to Rich, removed the felon-in-possession charge against Rich, removed the distribution-of-cocaine count against Bundy, and added the $190,994 seized earlier from Bundy to the forfeiture notice. Upon defense counsel's motion, the trial was continued to September 21, 2009. (ECF Nos. 90, 91.) In June 2009, Montemarano sought and received leave of court to file a state court petition for writ of error coram nobis challenging one of Bundy's prior state convictions. (ECF No. 96.) On August 5, 2009, Bundy pled guilty to the conspiracy count in the superseding indictment. (ECF No. 97.) Sentencing was set for January 7, 2010. (ECF No. 100.) Also on August 5, 2009, the Court signed a preliminary forfeiture order, including the assets seized previously.[6] (ECF No. 101.) The order indicated the Court would hold a hearing at the sentencing to determine any claims by Bundy or third parties that the assets should not be forfeited. Neverdon filed his petition for claim as to his fees still owing in the civil forfeiture case. (ECF Nos. 102, 103.)

The sentencing hearing was continued several times while the coram nobis proceedings were pending in state court (ECF Nos. 105, 111, 114), but eventually the Court denied further continuances and held the hearing on April 21, 2011 (ECF Nos. 117, 120). Bundy was sentenced to 292 months in prison and a supervised release term of ten years. (ECF No. 123.) The same day, the Court entered a money judgment of $300,000 against Bundy in the final order of forfeiture that was effective as to all assets sought by the Government except for $45,000, which was released to Neverdon to satisfy his third-party claim. (ECF No. 122.)

---

[6] The docket entry erroneously indicates the Court signed the order on August 12, 2009, but that is the date the order was finally docketed.

Notices of appeal were filed by Bundy *pro se* (ECF No. 125) and Montemarano (ECF No. 127). Montemarano then filed a Motion to Vacate Prior Forfeiture Orders and Demanding Return of All Seized Property. (ECF No. 135.) When the Government had not responded to Montemarano's motion, he filed a motion for default judgment. (ECF No. 146.) The Court determined it had no jurisdiction to rule on the motions, having been divested of it when the notices of appeal were filed; consequently, the motions pertaining to forfeiture were denied without prejudice. (ECF Nos. 164, 165.) Bundy's conviction and sentence were affirmed on appeal; the Fourth Circuit Court of Appeals noted Bundy failed to contest the forfeiture at any stage of the proceeding, thereby invoking the plain-error doctrine, but, further, noted no error could be found relating to forfeiture; additionally, the Court agreed the District Court was without jurisdiction to entertain the motion to vacate the forfeiture orders and the motion for default judgment once a notice of appeal had been filed. *United States v. Bundy*, No. 11-4464 (4th Cir. Sept. 11, 2012). The Supreme Court denied Bundy's petition for writ of certiorari on February 19, 2013. *Bundy v. United States*, No. 12-8207. Bundy's current § 2255 motion was mailed from prison on January 22, 2014, and therefore deemed filed on that date. (ECF No. 210.) *See Houston v. Lack*, 487 U.S. 266 (1988) (prisoner's filing date is deemed same as date prisoner puts material into prison mailbox). The motion was docketed in this Court on January 27, 2014. It is timely filed.

No hearing is necessary. 28 U.S.C. § 2255(b), (c); Rules Governing Section 2255 Proceedings, Rule 8(a); Local Rule 105.6 (D. Md. 2016). The motion will be denied.

## II. *Standard for Motion under 28 U.S.C. § 2255*

Four grounds for relief are provided in § 2255 for one who is claiming a right to be released:

1) The sentence was imposed in violation of the Constitution or United States law;

2) The court was without jurisdiction to impose the sentence;

3) The sentence was in excess of the maximum authorized by law; or

4) The sentence is otherwise subject to collateral attack.

The Supreme Court has said that, unless a claim alleges either a lack of jurisdiction or a constitutional error, then the scope of collateral attack is far more limited. *United States v. Addonizio*, 442 U.S. 178, 185 (1979), *abrogated on other grounds by amendment to* Federal Rule of Criminal Procedure 35(b). Thus, an error of law cannot be the basis for collateral attack unless the claimed error constituted "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 185 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Likewise, errors of fact may only serve as the basis for § 2255 relief "'where the errors [are] of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.'" *Id.* at 186 (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)).

## III. Analysis

As stated by Bundy in his § 2255 motion, he has raised the following grounds:

GROUND ONE: Bundy was denied counsel of choice and denied effective assistance through sentencing.

GROUND TWO: Bundy was denied effective assistance when defenses Attorney Michael Montemarano failed to investigate his prior convictions that were untrue and unreliable.

GROUND THREE: In light of Alleyne, are mandatory minimums based on "felony drug offenses" covered under "requisite statutory factual predicate"

GROUND FOUR: Recent legal developments demonstrate Bundy is no longer a career offender.

GROUND FIVE: Bundy was denied effective assistance at the appeal level.

GROUND SIX: The cumulativeness of Michael Monteramarono's incompetence requires set aside the plea due to ineffective assistance of counsel.

GROUND SEVEN: The commerce clause's reach was recently narrowed in Nat'l Indep. Buss. Fed. v. Sebelius, where "compelling" someone is not necessarily covered.

(Bundy Mot. 2255 (*sic* throughout).)

### A. *Ground One: Bundy was denied counsel of choice and denied effective assistance of counsel through sentencing.*

Bundy's Ground One contains two different issues. The first is his claim that he was wrongly denied counsel of choice when the Court disqualified Neverdon based upon a conflict of interest. The second is a general claim of ineffective assistance of counsel in the plea proceeding and the subsequent sentencing proceeding.

The first of these two claims may be considered procedurally defaulted. The Supreme Court has stated that "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The *Massaro* Court held that this general rule does not apply to an ineffective-assistance-of-counsel claim, which "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.*

Bundy's claim about denial of counsel of his choice is not rooted in the effectiveness *vel non* of his assigned counsel but in the Court's decision to disqualify Neverdon from representation of Bundy. That decision could have been raised on direct appeal but was not by his counsel, Montemarano. Even though Bundy did raise the issue himself in a supplemental *pro se* brief in the Fourth Circuit, that Court did not permit Bundy's brief to be filed. *United States v. Bundy*, No. 11-4464, ECF Nos. 69-1, 80. Arguably, Montemarano's decision not to place the issue before the Fourth Circuit is the cause for Bundy's not having the issue considered by that

7

Court. However, that sort of tactical decision is a doubtful basis for claiming "cause" when determining whether a procedurally defaulted issue may be the basis for a collateral attack. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . [there is] no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

Even if it could be said that Bundy has demonstrated cause as to why his counsel-of-choice claim was not presented on appeal, he has failed to demonstrate prejudice. He has made no showing of a likely different outcome had Neverdon remained his counsel. Moreover, he has not shown that the Court's decision was erroneous. The record shows the Court carefully considered the conflict-of-interest matter and reached a decision in accord with governing principles of law. Furthermore, even if Montemarano had appealed on this point, Bundy has failed to show that his argument would have had any chance of success on direct appeal. Thus, Bundy has not established a basis for relief due to the Court's disqualification of Neverdon.

Bundy also takes issue with the Court's not considering the Government's request for forfeiture as a "separable" matter, arguing that Neverdon could have represented Bundy just on the forfeiture portion of the criminal case. (Bundy Mot. 2255 Supp. Mem. 48.[7]) He cites no authority for the notion that criminal forfeiture is a separate proceeding from the rest of the criminal case. Contrarily, it is well established that forfeiture in a criminal case is part of the sentence imposed. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995). Consequently, Neverdon could not have represented Bundy only as to forfeiture. To the extent that Bundy's challenge is really to the order of forfeiture, such cannot serve as the basis for a § 2255 motion because forfeiture is noncustodial in nature, and a § 2255 motion may only be directed at the

---

[7] Bundy's supporting memorandum exists only in paper form; no citation to it is available in CM/ECF.

custodial portion of a sentence. *United States v. Fabian*, 798 F. Supp. 2d 647, 684-85 (D. Md. 2011).[8]

As to the second part of Ground One, that, too, is without merit. To prevail on a claim of ineffective assistance of counsel, Bundy must show both that his attorney's performance fell below an objective standard of reasonableness and that Bundy suffered actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). An objective standard of reasonableness is derived from "prevailing professional norms," *id.* at 688, and counsel's performance presumptively falls within the realm of reasonable professional assistance, *id.* at 690. Performance is judged, but in a "highly deferential" manner, on the facts of the particular case. *Id.* at 689-90. Accordingly, a defendant must show that counsel's acts and omissions were, in light of all of the circumstances, "outside the range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court may evaluate either the "performance" prong or the "prejudice" prong first. *Id.* at 697. An insufficient showing on either prong ends the inquiry. *Id.*

Bundy's claim of ineffective assistance of counsel in Ground One rests on his contention that Montemarano was ineffective for failing to challenge the forfeiture, thereby rendering his

---

[8] At the time this Court entered the protective order as to the $190,000 in substitute assets, the Fourth Circuit permitted pretrial restraint of untainted assets. *See United States v. Bollin*, 264 F.3d 391, 421-22 (4th Cir. 2001). That precedent was abrogated by the Supreme Court case of *Luis v. United States*, 136 S. Ct. 1083 (2016), in which the four-justice plurality and the concurring justice agreed that pretrial restraint of untainted assets violated the Sixth Amendment right to retain counsel of one's choice. *Id.* at 1096 (plurality op.), 1097 (concurring op.). *See also United States v. Chamberlain*, 868 F.3d 290, 291, 297 (4th Cir. 2017) (overruling *Bollin* and similar precedent; "By its plain text, [21 U.S.C.] Section 853(c) permits the government to obtain a pretrial restraining order over only those assets that are directly subject to forfeiture as property traceable to a charged offense."). Although this recent development in the case law, had it existed in 2008, would have made a difference in the Court's decision to issue the protective order, the *Luis* ruling has not been held retroactively applicable on collateral review as of this writing. Thus, *Luis* does not afford a basis for Bundy to claim relief. *See, e.g.*, *Valencia-Trujillo v. United States*, No. 8:02-CR-329-T-17EAJ, 2017 WL 3336491, at *8 (M.D. Fla. Aug. 4, 2017) (concluding *Luis* does not apply retroactively to cases on collateral review).

plea unknowing, unintelligent, and involuntary. (Bundy Mot. 2255 Supp. Mem. 51, 57.) Bundy's argument assumes a challenge to forfeiture would have been successful. As noted earlier, he has failed to demonstrate a likelihood of success in that regard. Merely claiming an entitlement not to have assets forfeited, on the one hand, and establishing a favorable outcome on a challenge to forfeiture, on the other hand, are two quite different things. So, even if Montemarano had challenged forfeiture, the record does not support Bundy's implicit argument of presumed success. Indeed, once a money judgment was entered as part of the criminal sentence, the $190,000 was subject to use by the Government for satisfaction of that judgment, regardless of whether those funds were lawfully obtained. 21 U.S.C. § 853(p). *See also United States v. Blackman*, 746 F.3d 137, 145 (4th Cir. 2014) (money judgments are proper in the forfeiture context and are "especially appropriate where physical assets derived from the [criminal conduct] are no longer traceable or available"). Bundy was put on notice by the preliminary order of forfeiture that the Government was seeking a $300,000 money judgment and that the Government was including the $190,000 in the substitute assets. (ECF No. 101.) No basis for a successful challenge to forfeiture can be found in the record.

The plea agreement itself merely indicates Bundy's reservation of a right to challenge forfeiture. (Bundy Mot. 2255 Ex. O, p. 6.) It does not say his plea is contingent upon a challenge, successful or otherwise, to forfeiture. Nor is it likely the Court would have accepted a contingent plea. The circumstances do not support his assertion that his plea was unknowing, unintelligent, or involuntary. Thus, Bundy has not established prejudice on this claim of ineffective assistance of counsel.

**B. Ground Two: Bundy was denied due process and effective assistance when defense attorney Michael Montemarano failed to investigate his alleged prior convictions that were materially untrue and unreliable. The alleged prior convictions manifested a miscarriage of justice in the criminal proceeding.**

Bundy complains that Montemarano failed to investigate prior state convictions and seems to suggest that invalid prior state convictions formed part of the basis for the sentence imposed. The Court determined Bundy was a career offender based on a 2004 Baltimore City Circuit Court conviction for possession of cocaine with intent to distribute and a 2003 Baltimore City Circuit Court conviction for resisting arrest. (Sentencing Tr. 12-13, 17, 20, 37, 40-41, Bundy Mot. 2255, Ex. V; Presentence Report ("PSR") ¶¶ 32-35, Govt's Resp., Ex. C, ECF No. 235-3.) Bundy's adult criminal history also included an assault conviction for which he received a four-year sentence with two years suspended, a fourth-degree sex offense, and a 1994 conviction for conspiracy to distribute/dispense narcotics, as well as an assault charge for which he received probation before judgment. (PSR ¶¶ 24-31.) He also had a juvenile record of numerous arrests for offenses including Assault & Battery, Daytime Housebreaking, Breaking & Entering, and Auto Larceny, and he was found delinquent on three counts of assault in 1991. (PSR ¶ 22.) Bundy did not succeed in his coram nobis challenge to the 2004 felony drug conviction. (Montemarano Aff. 5, May 7, 2014, ECF No. 235-1.) *See also Maryland v. Bundy*, No. 299285022, Cir. Ct. Balt. City, Dkt. Ents. Feb. 19, 2010, through Mar. 31, 2016 (denial of coram nobis petition affirmed by Maryland Court of Special Appeals) (*see* casesearch.courts.state.md.us).

None of the convictions that entered into the sentencing decision has been ruled invalid, and it is not appropriate for this Court in this proceeding to look behind convictions of record and determine their validity. Even assuming *arguendo* that Montemarano did not investigate Bundy's prior convictions to his satisfaction, Bundy has failed to demonstrate a different

outcome would have been likely in the Court's sentence and, therefore, has failed to establish an entitlement to relief based on his assertion of defense counsel's failure to investigate the prior convictions.

Bundy also faults Judge Quarles, who presided over this case until early 2016, because, Bundy alleges, "he as a state court judge informed him [Bundy's conviction for resisting arrest] was <u>not</u> a crime of violence." (Bundy Mot. 2255 Supp. Mem. at 61.) The transcript of the state court proceeding, supplied to the Court by Bundy himself, shows clearly that Bundy's allegation is not true. The transcript shows Bundy's attorney, Harold Glaser, during the guilty plea proceeding on February 20, 2003, told Bundy the assault charge and the urination charge would be dropped if he were pleading guilty to resisting arrest, and then told Bundy, "I told you we didn't agree to the crime of violence that you committed an assault." (Bundy Mot. 2255 Ex. A1, pp. 12, 19.) At no time did Judge Quarles, who presided over that state court proceeding, tell Bundy resisting arrest was not a crime of violence.

To the extent Bundy questions the legitimacy of using his Maryland resisting arrest conviction as a crime of violence under the residual clause of United States Sentencing Guideline ("USSG") § 4B1.2 as it existed at the time of his sentencing in 2011, and therefore claims he is entitled to be considered as other than a career offender, his argument has no merit. The Fourth Circuit ruled prior to Bundy's sentencing that such a conviction qualifies as a crime of violence for the purpose of computing the career offender enhancement. *See United States v. Jenkins*, 631 F.3d 680, 685 (4th Cir. 2011). Although that conclusion may no longer hold water in light of *United States v. Aparicio-Soria*, 740 F.3d 152 (4th Cir. 2014), which ruled that Maryland's crime of resisting arrest did not satisfy the "force" clause of USSG § 2L1.2 (applicable to illegal reentry), and in light of Amendment 798 (effective August 1, 2016), which redefined "crime of

violence" in § 4B1.2 to delete the residual clause, those subsequent developments do not help Bundy. At the time he was sentenced, Bundy also had two controlled substance felony convictions, both of which remain valid in his criminal history, and those two together satisfy the career offender guideline in § 4B1.1(a), then and now.

The maximum penalty for the crime to which Bundy pled guilty—conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin or to distribute and possess with intent to distribute five kilograms or more of a substance containing cocaine in violation of 21 U.S.C. § 846—is life imprisonment. 21 U.S.C. § 841(b)(1)(A). Bundy's sentence of 292 months is within the statutory maximum and was imposed when the sentencing guidelines were advisory; further, the Court imposed that sentence while taking into consideration the factors in 18 U.S.C. § 3553(a). His sentence is not subject to collateral attack based on his argument pertaining to advisory sentencing guidelines. *See United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) (when sentence is within maximum allowed by law, error in application of advisory sentencing guidelines does not rise to level of "fundamental defect" required for vacating sentence on collateral review). Thus, Bundy has failed to establish in Ground Two either ineffective assistance of counsel or denial of due process. His second asserted ground for relief is without merit.

> C. **Ground Three:** "In <u>Alleyne v. United States</u>, Justice Breyer held that 'where a mandatory minimum is at issue, application of <u>Apprendi</u> would mean that the government cannot force a judge who does not wish to impose a higher sentence to do so unless a jury finds the requisite statutory factual predicate.' Is 21 U.S.C. § 841(b)(1)(A)'s statutory required 'felony drug offense,' that increases the mandatory minimum, a 'requisite statutory factual predicate' within the meaning of <u>Alleyne</u> and therefore Sixth Amendment protected."

(Bundy Mot. 2255 Supp. Mem. 68.) Bundy seems to suggest in Ground Three that the mandatory minimum of twenty years, as permitted by 21 U.S.C. § 841(b)(1)(A) for his offense,

13

was unlawfully imposed because he did not admit he had any felony drug offenses. (*Id.* 70.) Yet, one paragraph earlier, Bundy concedes he stipulated to "the existence of a 2004 Maryland State conviction." (*Id.*) The 2004 Maryland conviction was for a felony drug offense. The 2004 drug conviction was included in the criminal history recited in the PSR, and it was much discussed at the sentencing hearing (*Id.* Ex. V, Sentencing Tr.). At no time in this Court did Bundy contest the existence of that conviction, and he cannot credibly claim now that it was improper for the Court to rely upon it.

In addition to his argument's factual shortcomings, Bundy has rested his third ground upon a faulty legal analysis. He has apparently proceeded on the assumption that a twenty-year minimum could only be imposed if he had *two* felony drug offenses and that he would be subject only to a ten-year minimum if he had just one such conviction. The permissible penalty range in Section 841(b)(1)(A) is ten years to life if the statutory violation is for one kilogram or more of heroin, which was the charge against him; his violation of the statute when he had one prior felony drug offense subjected him to a twenty-year minimum. Judge Quarles plainly informed him in his rearraignment proceeding that the minimum sentence would be twenty years if he had a prior felony drug offense, and Bundy responded that he understood. (*Id.* Ex. R, Rearraignment Tr. 5-6.) Although he claimed at sentencing to be unaware of the Government's desire to seek the twenty-year minimum sentencing enhancement when he pled guilty, the plea colloquy shows he was fully aware of the potential penalty against him.

In the end, though, his argument raises a moot point. Because he was subject to the career offender designation under the advisory guidelines, Bundy landed in the guidelines range of 292 months to 365 months, based upon his offense level of 37 with two levels off for acceptance of responsibility and his criminal history category of VI. The plea agreement

indicated Bundy's offense level would be computed as 37, reduced to 35. (*Id.* Ex. O, Plea Agreement, pp. 4-5.) This same computation, including the guidelines range, was recited in the PSR. (Govt's Resp., Ex. 3, PSR ¶¶ 19-21, 59.) Given that the twenty-year minimum was well under the bottom of the applicable guidelines range and that the Court duly considered the sentencing factors in 18 U.S.C. § 3553(a), Bundy's argument that the Court somehow erred in incorporating the twenty-year minimum into Bundy's sentence of 292 months is irrelevant. His Ground Three is without merit.

### D. Ground Four: "Recent legal developments demonstrate Bundy is no longer a career offender."

(Bundy Mot. 2255 Supp. Mem. 72.) Ground Four is a different version of his earlier argument as to the validity of determining he was a career offender based upon his conviction for resisting arrest. As noted before, even if that conviction could not now be considered in the determination that Bundy is a career offender, the undisputed fact remains that he had two prior felony drug convictions and those qualify him as a career offender under both earlier and current versions of the sentencing guidelines. Ground Four has no merit.

### E. Ground Five: Montemarano rendered ineffective assistance of counsel.

Bundy's Ground Five is a rehash of his earlier complaints about Montemarano's representation in this Court and on appeal. One point Bundy brings up is that, allegedly, Montemarano advised Bundy to plead guilty to avoid a mandatory life sentence, which he did not face. (*Id.* 79.) Bundy, however, did face a mandatory life sentence if the Government persisted in seeking enhancement under 21 U.S.C. § 851 based on Bundy's two prior felony drug offenses. *See* 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life

15

imprisonment without release . . . ."). At sentencing, the Government indicated it would only proceed on one of those convictions, which would drop the mandatory minimum to twenty years. (Sentencing Tr. 39-42.) Until the Government agreed to do that, though, Bundy faced potential mandatory life imprisonment.

The rest of Ground Five has been addressed earlier. In total, Ground Five has no merit. Bundy made no argument in his supporting memorandum as to any other ground for relief asserted in his § 2255 motion, and, therefore, points he did not address in his argument are deemed abandoned.

## IV. *Conclusion*

Bundy's sentence was not imposed in violation of the Constitution or United States law; the Court's jurisdiction to impose the sentence has not been contested; the sentence was not in excess of the maximum authorized by law; and the sentence is not otherwise subject to collateral attack. Bundy's motion pursuant to 28 U.S.C. § 2255 is without merit and is, consequently, DENIED.

A certificate of appealability may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003) (citing *Slack*, 529 U.S. at 484). Bundy has failed to show the denial of a constitutional right and has not demonstrated that reasonable jurists would differ in this Court's assessment of his constitutional claims. Accordingly, the Court DECLINES to grant Bundy a certificate of appealability. The Clerk

SHALL SEND a copy of this memorandum and order to Bundy at the address he has on file with the Court.

DATED this 18th day of July, 2018.

                                           BY THE COURT:

                                           _____/s/_____
                                           James K. Bredar
                                           Chief Judge